STROUD, Judge.
 

 *143
 
 Father appeals from an order awarding attorney's fees. Although the parties ultimately settled their custody dispute in a manner more favorable to Father than Mother initially sought, the trial court did not err in determining that Mother acted in good faith in defending against Father's claims regarding child custody and child support and pursuing her own counterclaims. Where Father's monthly income was approximately nine times more than Mother's income, and she had recently declared bankruptcy, the trial court did not err in finding that Mother had insufficient means to defray the expense of this suit and was entitled to an award of attorney's fees. We therefore affirm the trial court's order.
 

 I. Background
 

 The parties married in 1999, separated in 2008, and later divorced. In 2009, they entered into a Separation and Property Settlement agreement which addressed child custody and child support for their three children; the parties had joint legal custody of the children, and Mother had primary physical custody. Father had visitation every other weekend and on designated holidays. In 2013, Father filed a complaint for child custody, child support, and attorney's fees, requesting that he have "no less than joint physical and legal custody of the minor children," for the court to establish child support, for attorney's fees, and for a temporary parenting arrangement. Mother filed a response to the request for temporary parenting arrangement and an answer and counterclaims for custody, child support, specific performance, and attorney's fees.
 

 Over the next three years, the parties engaged in discovery and filed many motions and counter-motions, and the trial court entered
 
 *680
 
 many orders. Finally, on 2 June 2016, the trial court entered a "Consent Order for Modification Permanent Child Custody and Dismissal of Motions for Contempt and Orders to Show Cause." The Consent order granted joint legal and physical custody of the children to the parties and includes extensive detailed provisions regarding decision-making, regular and holiday schedules, extracurricular activities, communications between the parties, use of drugs and alcohol by the parties, relocation, appointment of a parenting coordinator, and other matters. The Consent order provided that "[a]ny pending claims for attorney's fees and costs not resolved by this Order, shall remain open for determination by this Court." The trial court held a hearing on Mother's request for attorney's fees on 20 July 2017. The trial court entered an order awarding Mother $ 45,000.00 in attorney's fees on 29 November 2017, and Father timely appealed.
 
 *144
 
 II. Standard of Review
 

 The issues on appeal arise from the trial court's award of attorney's fees to Mother under
 
 N.C. Gen. Stat. § 50-13.6
 
 :
 

 In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit.
 

 N.C. Gen. Stat. § 50-13.6
 
 (2017). Before awarding fees, the trial court must conclude that the party seeking an award of fees is "an interested party acting in good faith who has insufficient means to defray the expense of the suit."
 

 Id.
 

 "Whether these statutory requirements have been met is a question of law, reviewable on appeal. Only when these requirements have been met does the standard of review change to abuse of discretion for an examination of the amount of attorney's fees awarded."
 
 Schneider v. Schneider
 
 , --- N.C. App. ----, ----,
 
 807 S.E.2d 165
 
 , 166 (2017). In addition, the trial court's findings of fact must be supported by competent evidence.
 
 See
 

 Simpson v. Simpson
 
 ,
 
 209 N.C. App. 320
 
 , 324,
 
 703 S.E.2d 890
 
 , 893 (2011).
 

 III. Acting in Good Faith
 

 Father first argues that Mother has not acted or proceeded in good faith.
 
 [1]
 
 He argues that "[t]he reality of this case is that there was never a 'legitimate dispute' between the parties with respect to the custody of the minor children. The 'dispute' was at all times one-sided and manufactured by the [Mother's] bad faith resistance to allow [Father] to increase his parenting time of the minor children." He claims the trial court was "unjustly punishing" him with the award of attorney's fees. Father challenges the trial court's finding that "Mother has conducted herself as a reasonable party acting in good faith" and the trial court's related conclusion:
 

 *145
 
 5. Mother has proceeded and acted in this matter in "good faith" pursuant to N.C.G.S. § 50-13.6.
 

 While there is not a legal definition of good faith in this context, our Supreme Court has previously adopted the definition of good faith as "honesty of intention, and freedom from knowledge of circumstances which ought to put one upon inquiry" for Rule 11 sanctions.
 
 Bryson v. Sullivan
 
 ,
 
 330 N.C. 644
 
 , 662,
 
 412 S.E.2d 327
 
 , 336 (1992) (brackets omitted). "Because the element of good faith is seldom in issue a party satisfies it by demonstrating that he or she seeks custody in a genuine dispute with the other party."
 
 Setzler v. Setzler
 
 ,
 
 244 N.C. App. 465
 
 , 467,
 
 781 S.E.2d 64
 
 , 66 (2015) (citation, quotation marks, and ellipsis omitted).
 

 Here, the record and transcript abundantly demonstrate that the parties had a genuine dispute over custody of the children. Father wanted joint legal and physical custody, with the children spending equal time with
 
 *681
 
 each parent, while Mother wanted to maintain their previous custody arrangement of weekend and holiday visitation to provide more stability for the children. Father argues that because the parties ultimately agreed to an equal custody arrangement in a consent order, that Mother did not act in good faith by defending against Father's custody claim and pursuing her own custody claim.
 

 Father's argument overlooks the history of the litigation regarding custody in this case and the many issues beyond the precise custodial schedule of the children. We will not recite the entire history of the litigation, but both parties filed many motions, including motions for contempt and to compel discovery. The trial court entered orders on many of these motions. In 2014, the trial court entered a custody order including these findings of fact:
 

 42. Father is asking the Court to allow the minor children to equally (50/50) spend time with each parent so that he has quality time to spend with the minor children on a regular basis. Father's life and current work schedule would permit him have joint (50/50) physical custody of the minor children.
 

 43. Mother believes that the current parenting time schedule provides stability and that is what is important for the minor children. She does not want to see their routine changed. However, Mother is amenable to a week-on/week-off parenting time schedule during the summer, so long as Father is not drinking.
 

 *146
 
 44. This Court finds that it is in the best interests of the minor children that they do have a routine which provides stability, but they also have the opportunity to spend quality time with both parents.
 

 45. This Court finds that it is in the best interests of the minor children that Father's parenting time be expanded, but that the minor children are also not forced into a schedule that does not provide for stability and continuity. Particularly concerning to this court is [R.C.] with his struggle in school and how a huge change in his every day schedule and structure might affect him as the parties work towards helping him progress in school.
 

 46. This Court finds that it is in the best interests of the minor children for their primary physical custody to remain with Mother and for Father to have secondary physical custody of the minor children. Father's parenting time with the minor children shall be expanded from what he currently has.
 

 In the Consent Custody order, the trial court noted some of the history of the case and the disposition of the pending motions:
 

 6. On September 14, 2014, this Court entered an Order for Permanent Child Custody (hereinafter the "First Custody Order").
 

 7. On April 13, 2015, Father filed a Motion for Modification of Child Custody and Motion for Contempt and Order to Show Cause. An Order to Show Cause was entered on April 16, 2015.
 

 8. On July 27, 2015, Father filed a Second Motion for Modification of Child Custody and Motion for Contempt and Order to Show Cause. No Order to Show Cause was entered with respect to this Motion for Contempt.
 

 9. On October 30, 2015, Mother filed a Motion for Contempt. An Order to Show Cause was entered on November 6, 2015.
 

 10. On December 15, 2015, Father filed a Motion for Emergency Child Custody; Motion for Temporary Parenting Arrangement; and Third Motion to Modify Child Custody.
 

 *147
 
 11. On December 17, 2015, this Court entered an Order Denying Temporary Emergency Custody and Father's Motion for Temporary Parenting Arrangement.
 

 12. On February 26, 2016, Mother filed a Motion for Contempt. No Order to show Cause was entered with respect to this Motion for Contempt.
 

 ....
 

 5.
 
 DISMISSAL OF MOTIONS FOR CONTEMPT
 
 . Father's April 13, 2015 Motion for Contempt and Order to Show Cause is hereby dismissed. This Court's Order to Show Cause issued on April 16, 2015 is hereby dismissed. Father's July 27, 2015 Motion for Contempt and Order to Show Cause is hereby dismissed. Mother's
 
 *682
 
 October 30, 2015 Motion for Contempt is hereby dismissed. This Court's Order to Show Cause issued on November 6, 2016 is hereby dismissed. Mother's February 26, 2016 Motion for Contempt is here by [sic] dismissed. Any and all attorney's fees claims with respect to these Motion for Contempt are hereby dismissed.
 

 In the attorney fee order on appeal, the trial court also carefully allocated the attorney fees attributable to the various claims and motions and specifically noted:
 

 12. This Order deals only with attorney's fees in connection with the original permanent child custody and original child support Orders.
 

 13. While there have been other issues that the Court has ruled on, those have been dealt with separately and no fees for those other issues are included in this Order.
 

 Father also does not challenge the trial court's allocation of fees to the child custody and support issue; he challenges just the conclusion of good faith because the case was ultimately, after years of litigation, settled.
 
 [2]
 

 Father's logic that the existence of a genuine disagreement is determined solely by the outcome is seriously flawed and not supported by
 
 *148
 
 the law.
 
 See
 

 id.
 

 at 468
 
 ,
 
 781 S.E.2d at 66
 
 ("[I]t is undisputed that defendant was in a genuine dispute with plaintiff-plaintiff initiated a claim for custody and defendant brought a counterclaim for custody."). Were we to adopt Father's argument, parties would have a strong disincentive to settle a custody or child support case, since the party who ultimately agrees to a resolution more similar to the one sought by the other party would risk liability for attorney's fees for not acting in good faith. Instead, they would opt to pursue the litigation to its bitter end even if they may be otherwise willing to settle. This is exactly the opposite result encouraged by our statutes and case law.
 
 Dixie Lines v. Grannick
 
 ,
 
 238 N.C. 552
 
 , 555,
 
 78 S.E.2d 410
 
 , 413 (1953) ("The law favors the settlement of controversies out of court. It encourages such action by securing to every man the opportunity to negotiate for the purchase of his peace without prejudice to his rights." (citations omitted)).
 

 As Mother's brief notes, Father's statement of the facts in his brief is argumentative and blames the entire dispute on Mother's unreasonable refusal to agree with his wishes. Father's arguments on appeal bear some similarity to the arguments made in the hearing regarding attorney's fees. The trial court noted the obvious discord between counsel for the parties at the hearing:
 

 This case perplexes me so much, the way both of the attorneys have behaved in this case towards each other. I know all three of you, and I have never seen any of this behavior in other cases with y'all. And it's just perplexing to the Court how it can get this out of hand. I have asked both sides to seriously consider whether or not they want to go down that path
 
 [3]
 
 and proceed with the hearing. And I have asked to have an answer after lunch because it's the last thing scheduled. We've got three other matters or two other matters to finish up.... So I really want everybody to cool down. I want to hear your argument on the child support, on the-on the attorney's fees, your argument on the attorney's fees, and then I'm going to recess for lunch and go to my [meeting].... And then I want to know when we resume, probably 1:45, whether or not both sides are still insisting on pursuing whatever claims they may or may not have, and I'll be happy to hear arguments about whether
 
 *149
 
 or not there's actually a pending Rule 11 motion against Ms. Watson, since that's not how the pleading is titled, if-all of this is going to continue to be pursued; okay?
 

 The trial court was in the best position to evaluate the merits and sincerity of the claims of both parties and to determine whether Mother was acting in good faith.
 
 See
 

 *683
 

 Hall v. Hall
 
 ,
 
 188 N.C. App. 527
 
 , 530,
 
 655 S.E.2d 901
 
 , 903 (2008) ("This Court has recognized that the trial judge is in the best position to make such a determination as he or she can detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges." (quotation marks omitted)). The challenged finding and conclusion regarding good faith are based on competent evidence. The trial court properly concluded that the parties' dispute as to custody was genuine, and Mother acted in good faith.
 

 IV. Insufficient Means to Defray the Expense of the Case
 

 Father next argues "that at all times, [Mother] was able to employ counsel to meet [Father] on a level playing field without the award of attorney's fees." Father challenges the court's finding that Mother had "insufficient means to defray the expense of this suit" and related conclusion:
 

 6. Mother has insufficient means to defray the expense of the custody and child support action, including attorney's fees as provided in N.C.G.S. § 50-13.6.
 

 Yet Father does not challenge the trial court's related findings of fact upon which this conclusion is based:
 

 15. When this action was initiated by Father in 2013, Mother had worked for about half of the year, and earned approximately $ 20,000.00. Subsequent to 2013, she has earned gross income of approximately $ 40,000.00 per year.
 

 16. Mother also received $ 1,800.00 per month in alimony in 2013, and has received child support under the terms of a Separation Agreement, and then under the terms of the permanent child support Order entered September 28, 2015.
 

 17. The Court does not consider it appropriate to consider the fact that Mother has money for child support as it would not be appropriate for her to have to deplete her monthly child support allotment in order to pay attorney's fees.
 

 *150
 
 18. Father, on the other hand, earns approximately $ 30,000.00 per month.
 

 19. Mother has incurred substantial fees from Mr. Myers for the various issues that he has represented her on (child custody and child support).
 

 ....
 

 25. The Court finds that the complexity of the case, the amount of discovery that was required in order to proceed with this case, and the number of hearing [sic] that these particular issues have required is all something the Court considers in determining what would be a reasonable attorney's fee.
 

 ....
 

 29. Mother received $ 10,000.00 from her parents, and that while the Court does find that she does have some resources with which to pay attorney's fees, she should not have to deplete her estate, little that it is, or that she should have to deplete her monthly income in order to be able to pay attorney's fees to meet Father in this litigation.
 

 30. Arguments were made by Father's attorney, and the Court has considered the arguments that this was a de facto "pro bono" attorney-client relationship where Mother was running up thousands of dollars of attorney's fees, but that she had an agreement with her attorney to pay $ 100.00 per month; the Court does not find that this is a pro bono arrangement.
 

 31. Based on what the Court deems to be reasonable attorney's fees and considering the findings that I have made, the Court finds that a reasonable attorneys fee for custody and child support for Father to pay to Mother is $ 45,000.00 of the almost $ 75,000.00 that Mother is requesting.
 

 "A party has insufficient means to defray the expense of the suit when he or she is unable to employ adequate counsel in order to proceed as litigant to meet the other spouse as litigant in the suit."
 
 Dixon v. Gordon
 
 ,
 
 223 N.C. App. 365
 
 , 372,
 
 734 S.E.2d 299
 
 , 304 (2012). Here, Father does not dispute that Mother's estate is significantly smaller than his own and that there is a large disparity in the income between Mother and Father. Mother's income was approximately $ 40,000.00 per year
 
 *151
 
 when Father filed the complaint in 2013, and Father earns approximately $ 30,000.00 per month. In addition, Mother filed for bankruptcy in 2015, and she testified at the trial on attorney's fees that she only had $ 500.00 in her savings account. The challenged finding is based on competent evidence, and we conclude the trial court did
 
 *684
 
 not err in that Mother "has insufficient means to defray the expense of the suit."
 

 V. Amount of Attorney's Fees
 

 Finally, Father argues that the amount of the attorney's fees is an abuse of discretion "as the facts and Record of this case do not support the Trial Court's erroneous finding that '[Mother] has conducted herself as [sic] reasonable party acting in good faith[.]' " This is not a new argument but merely repeats the argument Father made earlier in his brief. It is well settled that the amount of attorney's fees is within the trial court's discretion and is reviewed for an abuse of discretion.
 
 See
 

 Schneider
 
 , --- N.C. App. at ----,
 
 807 S.E.2d at 166
 
 . The trial court found Mother's attorney's rate to be reasonable, and only awarded $ 45,000.00 out of approximately $ 75,000.00 that Mother requested. The trial court considered and rejected Father's argument that Mother's counsel did not really expect to be paid and addressed only the fees attributable to the pending motions, as provided by the consent order. The trial court acted well within its discretion in awarding the attorney's fees.
 

 VI. Conclusion
 

 For the foregoing reasons, we affirm the trial court's award of attorney's fees.
 

 AFFIRMED.
 

 Judges DILLON and BERGER concur.
 

 [1]
 

 We note that Father's arguments in his brief broadly cross-reference his 21 proposed issues on appeal. We have addressed only those issues for which he has set forth a specific argument, challenge to a specific finding or conclusion, and legal authority. The listing of issue numbers alone is not sufficient to make or preserve challenges that are not specifically made in his brief, and we have considered only the arguments actually made in the brief.
 
 See
 
 N.C. R. App. P. 28(b)(6).
 

 [2]
 

 Again, as noted above, Father's listing of issue numbers from the record on appeal is not sufficient to preserve his argument as to any particular finding of fact or conclusion of law, and we have addressed only those clearly identified in his brief.
 

 [3]
 

 At this point in the hearing, counsel for both parties were requesting sanctions under N.C. Gen. Stat. § 1A-1, Rule 11 against the other. They ultimately agreed to dismiss their Rule 11 motions.