IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-1065

Filed: 1 December 2020

Mecklenburg County, No. 15 CVD 15992

JUSTIN WAYNE WARD, Plaintiff,

v.

JESSICA MARIE HALPRIN, Defendant.

Appeal by plaintiff from orders entered 24 October 2018 and 2 May 2019 by

Judge Aretha V. Blake in Mecklenburg County District Court. Heard in the Court of

Appeals 12 August 2020.

> *Wofford Law, PLLC, by J. Huntington Wofford and Rebecca B. Wofford, for*
> *plaintiff-appellant.*
>
> *Fox Rothschild, LLP, by Michelle D. Connell, and Tom Bush Law Group, by*
> *Tom Bush and Rachel Rogers Hamrick, for defendant-appellee.*

YOUNG, Judge.

This appeal arises out of orders for child custody and child support. The trial

court did not err in ordering that Mother has final decision-making authority on all

major issues involving the minor children. The trial court also did not err in ordering

Father to pay Mother's attorney's fees. Accordingly, we affirm the decision of the

lower court.

I.      Factual and Procedural History

Justin Wayne Ward ("Father") and Jessica Marie Halprin ("Mother"), are the

parents of two minor children. Mother and Father were married but separated on 3

November 2013. On 7 November 2014, Father filed for divorce, and on 3 June 2015, he filed for child custody and child support seeking full physical and legal custody of the minor children. The parties executed a Memorandum of Judgment outlining the terms for shared (50/50) custody on a temporary basis, then transferred the venue from Davie County to Mecklenburg County, North Carolina.

On 18 August 2015, Father filed a Motion for Temporary Restraining Order and Preliminary Injunction regarding unilateral decisions Mother was making regarding the minor children. On 11 September 2015 and 14 September 2015, Mother filed a Motion for a Temporary Parenting Arrangement and a Motion to Dismiss Father's Request for Preliminary Injunction. On 19 February 2016, the trial court entered its Order on Temporary Parenting Arrangement. On 24 October 2018, the trial court entered an Order for Permanent Child Custody and Permanent Child Support granting both parents joint legal custody of the minor children, granting Mother permanent primary physical custody of the minor children, and requiring Father to pay child support. Father filed timely written notice of appeal.

Post-trial motions resulted in the entry of an Order Granting Motion for Rule 52 Relief and an Amended Order Permanent Child Custody and Child Support on 2 May 2019. In this Order, the trial court's findings of fact include that "[b]oth parties are fit and proper to have input into major decisions impacting the minor children," but that "[i]t is in the best interest of the minor children that the

primary custodial parent have final decision-making authority where the parents cannot reach a mutual agreement." Although the trial court awarded joint legal custody, Mother was awarded the ability to make decisions "concerning the general welfare of the minor children, not requiring emergency action, including, but not limited to, education, religion, and non-emergency major medical treatment." The trial court found that "[b]oth Mother and Father have close, loving relationships with the minor children." However, both parents have made unilateral decisions which have made co-parenting ineffective. Father filed timely written notice of appeal from these orders.

## II.  Standard of Review

"Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal." *Everette v. Collins*, 176 N.C. App. 168, 171, 625 S.E.2d 795, 798 (2006). An award for attorney's fees is also reviewed for an abuse of discretion. *In re Clark*, 202 N.C. App. 151, 168, 688 S.E.2d 484, 494 (2009). "An abuse of discretion is shown only when the court's decision is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Barton v. Sutton*, 152 N.C. App. 706, 710, 568 S.E.2d 264, 266 (2002).

## III.  Child Custody

Father contends that the trial court erred in ordering that Mother has final decision-making authority on major issues involving the minor children. We disagree.

"[T]he General Assembly's choice to leave 'joint legal custody' undefined implies a legislative intent to allow a trial court 'substantial latitude in fashioning a 'joint legal custody arrangement.'" *Diehl v. Diehl*, 177 N.C. App. 642, 647, 630 S.E.2d 25, 28 (2006). "This grant of latitude refers to the trial court's decision to distribute certain decision-making authority that would normally fall within the ambit of joint legal custody to one party rather than another based upon the specifics of the case." *Id.* "This Court must determine whether, based on the findings of fact below, the trial court made specific findings of fact to warrant a division of joint legal authority." *Hall v. Hall*, 188 N.C. App. 527, 535, 655 S.E.2d 901, 907 (2008).

In this case, the trial court made findings of fact which support its conclusion regarding legal custody. The findings of fact include: Mother has more one-on-one interaction with the minor children's school; Mother makes significant efforts to maintain the minor children's connections with Father's family; the minor children are excelling academically; the parties have not been able to co-parent effectively; one of the minor children was significantly impacted by Mother and Father's inability to communicate; Mother made the unilateral decision to put the children in camp during Father's custodial time; Father refused to provide Mother with travel information for the children and failed to return the children at the agreed-upon time; Mother has been a constant presence and source of care for the children; Father's new marriage will be a new transition as he plans to move out of state, but he is willing to maintain

a Charlotte residence to exercise his parenting time; both parents are fit and proper to have input on major decisions impacting the minor children; it is in the best interest of the minor children that the primary custodial parent have final decision-making authority where the parties cannot reach a mutual agreement; and the minor children attend a diverse school that is open to involvement with both parents. Based upon the findings of fact, the trial court concluded as a matter of law that "[i]t is in the best interest of the minor children for Mother to be granted primary custody, for Father to be given reasonable parenting time, and for the parties to have joint legal custody."

As required by *Diehl*, the trial court found that it is in the best interest of the minor children for the primary custodial parent to have final decision-making authority and found facts as to why Mother should have primary custody. As required by *Hall*, the trial court made findings of fact detailing past disagreements by the parties which illustrate their inability to communicate and the actual effect their contentious communications had on the minor children. Father has failed to show that the trial court's decision giving Mother final decision-making authority on major issues involving the children was manifestly unsupported by reason or that it could not have been the result of a reasoned decision. Accordingly, the trial court did not err.

IV.    Attorney's Fees

Father contends that the trial court erred in ordering him to pay attorney's fees to Mother. We disagree.

North Carolina General Statute §50-13.6 allows for counsel fees in actions for custody and support of minor children:

> In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding; provided however, should the court find as a fact that the supporting party has initiated a frivolous action or proceeding the court may order payment of reasonable attorney's fees to an interested party as deemed appropriate under the circumstances.

N.C. Gen. Stat. §50-13.6 (2020). Where the trial court did not make any findings or conclusions as to mother's good faith, it was sufficient that the evidence showed that she was an interested party acting in good faith. *Lawrence v. Tise*, 107 N.C. App. 140, 153, 419 S.E.2d 176, 185 (1992). "A party seeking attorney's fees must also show that the child support action [] was resolved in his favor." *Kowalick v. Kowalick*, 129 N.C. App. 781, 788, 501 S.E.2d 671, 676 (1998). Here, Mother was awarded child support and arrears.

Father does not challenge any specific finding of fact. Instead he contends only that Mother is not statutorily entitled to attorney's fees for her child custody and child support claims. Since Father did not challenge any of the findings of fact, they are deemed to be supported by competent evidence and are binding on appeal. The trial court made findings of fact to support the conclusion of law that "Mother is entitled to an award of attorney's fees for prosecuting her claims for child support and child custody, and her Motion to Compel."

The findings included Mother's attorneys' hourly rates, the customary fee for like work, the experience and ability of the attorneys, that Mother has insufficient means to defray the suit, that Mother was acting in good faith, that Father failed to pay adequate child support, that Mother has incurred reasonable attorney's fees, and that Father has the ability to pay. The findings and conclusions are in line with N.C. Gen. Stat. §50-13.6. Father failed to show that the trial court's decision was manifestly unsupported by reason or that it could not have been the result of a reasoned decision. Accordingly, the trial court did not err in ordering Father to pay attorney's fees.

AFFIRMED.

Judge TYSON concurs.

Judge MURPHY dissents.

Report per Rule 30(e).

MURPHY, Judge, dissenting.

I respectfully dissent from the Majority as the trial court erred in both awarding Mother the final decision-making authority without necessary supporting findings of fact and in ordering Father to pay Mother's attorney's fees where Mother had the resources to defray the expense of the suit.

## A. Child Custody

The Majority properly relies on *Hall v. Hall*, 188 N.C. App. 527, 655 S.E.2d 901 (2008) and *Diehl v. Diehl*, 177 N.C. App. 642, 630 S.E.2d 25 (2006) in concluding the trial court must make specific findings of fact to warrant a division of joint legal decision-making authority. *Supra* at 3-6. However, the Majority concludes the trial court's specific findings of fact were sufficient to warrant an unequal division of joint legal decision-making authority. *Supra* at 6. I disagree.

"Legal custody" generally refers to the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare. *See Patterson v. Taylor*, 140 N.C. App. 91, 96, 535 S.E.2d 374, 378 (2000); 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.2b at 13-16 (5th ed. 2002) ("If one custodian has the right to make all major decisions for the child, that person has sole 'legal custody.'"). As a general matter, the trial court has "discretion to distribute certain decision-making authority that would normally fall within the ambit of joint legal custody to one party rather than another based upon the specifics

of the case." *Diehl*, 177 N.C. App. at 647, 630 S.E.2d at 28. In order to exercise its discretion the trial court must make "sufficient findings of fact to show that such a decision was warranted." *Id.* The trial court failed to do so. Here, the trial court found both parents are fit and proper to have input on major decisions impacting the minor children. Despite this, the trial court awarded Mother final decision-making authority. This decision conflicts with our prior caselaw which holds both parents must be granted equal decision-making authority for issues related to the minor children, unless the trial court explicitly makes findings of fact appropriate to justify unequal decision-making authority. *See Diehl*, 177 N.C. App. at 647-648, 630 S.E.2d at 28-29.

In *Diehl*, the trial court found both parents were fit and proper to have joint legal custody of the minor children and granted primary physical custody to the mother and permanent joint legal custody to both the mother and father, noting the mother has "primary decision[-]making authority." If a particular decision will have a substantial financial effect on the father either party may petition the Court to make the decision, if necessary. *Id.* at 646, 630 S.E.2d at 28. There, the trial court's findings of fact included:

> [T]he parties are currently unable to effectively communicate regarding the needs of the minor children . . . the children have resided only with [mother], and [father] has exercised only sporadic visitation; [father] has had very little participation in the children's educational and extra-curricular activities; [mother] has occasionally found it

2

> difficult to enroll the children in activities or obtain services for the children when [father's] consent was required, as his consent is sometimes difficult to obtain; and when [child's] school recommended he be evaluated to determine whether he suffered from any learning disabilities, [father] refused to consent to the evaluation unless it would be completely covered by insurance.

*Id.* at 647, 630 S.E.2d at 28. In determining whether the trial court erred by awarding the parties joint legal custody while simultaneously granting mother primary decision-making authority, we held:

> [A]lthough the trial court awarded the parties joint legal custody, the court went on to award "primary decision-making authority" on all issues to [mother] unless "a particular decision will have a substantial financial effect on [father]. . . ." In the event of a substantial financial effect, however, the order still does not provide [father] with any decision-making authority, but rather states that the parties may "petition the Court to make the decision . . . ." Thus, the trial court simultaneously awarded both parties joint legal custody, but stripped [father] of all decision-making authority beyond the right to petition the court to make decisions that significantly impact his finances. We conclude that this approach suggests an award of "sole legal custody" to [mother], as opposed to an award of joint legal custody to the parties.

*Id.* at 646, 630 S.E.2d at 28. We reversed the trial court's ruling awarding primary decision-making authority to the mother and remanded for further proceedings regarding the issue of joint legal custody. *Id.* at 648, 630 S.E.2d at 29.

Relying on *Diehl,* in *Hall,* we reiterated "upon an order granting joint legal custody, the trial court may only deviate from 'pure' legal custody after making specific findings of fact." *Hall,* 188 N.C. App. at 535, 655 S.E.2d at 906. "The extent

3

of the deviation is immaterial . . . [we] must determine whether, based on the findings of fact below, the trial court made specific findings of fact to warrant a division of joint legal authority." *Id.* Findings which support the conclusion to award primary *physical* custody to one parent are not enough. *Id.* at 535, 655 S.E.2d at 906-07. When a trial court determines both parents are fit and proper persons to be awarded joint legal custody, then both parents must be granted equal decision-making authority for issues related to the minor children, unless the trial court explicitly makes findings of fact appropriate to justify unequal decision-making authority.

In the case before us, the Majority concludes, in relevant part, "the trial court made findings of fact which support its conclusion regarding legal custody." *Supra* at 4. In support of this statement, the Majority refers to the following findings of fact:

> 34. Mother has more one-on-one interaction with the minor children's school. . . .
>
> 35. Mother makes significant efforts to maintain the minor children's connections with Father's family, including paternal grandfathers, aunts, and cousins. The minor children have a positive, close and loving relationship with maternal grandparents with whom the minor children and Mother currently reside.
>
> . . .
>
> 42. The minor children are excelling academically.
>
> 43. The parties have not been able to co-parent effectively since their separation as both parties have unilaterally made decisions regarding the minor children. Mother has made unilateral decisions about the minor

4

*Murphy, J., dissenting.*

children's school and camps. Father has made unilateral decisions related to issues related to custody exchange, including changing the times and locations of exchanges.

44. In the Fall of 2015, the minor child Paxton was significantly impacted by the parties' inability to communicate when both parents enrolled the minor child in different schools and the child, in fact, attended the first week of school at two separate schools. Based on the credible evidence presented to the [c]ourt, Mother was aware that Father did not know that she had enrolled the minor child at Concord First Assembly School, and allowed Father to send the minor child to Dilworth Elementary School for an entire week knowing Paxton had already started school elsewhere.

45. In June of 2017, Mother unilaterally signed the children up for a camp that impeded on Father's custodial time.

46. In July of 2017, Father refused to provide Mother with substantive travel information for the children and unreasonably failed to return the minor children to Mother at the agreed-upon exchange time. In addition, Father frequently changes the exchange location at the last minute.

. . .

48. Throughout the transitions, Mother has been a constant presence and source of care for the minor children.

49. Father's [new] marriage [] will constitute an additional transition in the near future. Father is committed to building a new life with [his fiancé] in Tennessee. . .[but] Father intends to maintain [a] Charlotte residence to exercise his parenting time in Charlotte if necessary.

. . .

*Murphy, J., dissenting.*

> 51.     Both parties are fit and proper to have input into major decisions impacting the minor children. It is in the best interest of the minor children that the parties confer and discuss verbally or in writing, major issues relating to the minor children.

> 52.     It is in the best interest of the minor children that the primary custodial parent have final decision-making authority where the parties cannot reach a mutual agreement.

The trial court's findings of fact do not support stripping Father of his decision-making authority.  Similar to the findings in *Diehl*, the findings here predominately address the trial court's reasons for awarding Mother primary *physical* custody of the children.  *See Diehl*, 177 N.C. App. at 647, 630 S.E.2d at 29 ("These findings, however, predominately address the trial court's reasons for awarding [mother] primary physical custody of the children . . . . 'Decisions exercised with physical custody involve the child's routine, not matters with long-range consequences.'").  When the findings addressing reasons for awarding physical custody are removed, all we are left with are facts pertaining to the parties' inability to communicate and their tumultuous relationship.  *Hall* and *Diehl* rejected the proposition that such findings alone are enough to warrant an unequal split in decision-making authority.

The Majority asserts "[a]s required by *Hall*, the trial court made findings of fact detailing past disagreements by the parties which illustrate their inability to communicate and the actual effect their contentious communications have had on the

*Murphy, J., dissenting.*

minor children." *Supra* at 6. In support of this conclusion, the Majority refers to

Findings of Fact 43-46, which state:

> 43. The parties have not been able to co-parent effectively since their separation as both parties have unilaterally made decisions regarding the minor children. Mother has made unilateral decisions about the minor children's school and camps. Father has made unilateral decisions related to issues related to custody exchange, including changing the times and locations of exchanges.
>
> 44. In the Fall of 2015, the minor child Paxton was significantly impacted by the parties' inability to communicate when both parents enrolled the minor child in different schools and the child, in fact, attended the first week of school at two separate schools. Based on the credible evidence presented to the Court, Mother was aware that Father did not know that she had enrolled the minor child at Concord First Assembly School, and allowed Father to send the minor child to Dilworth Elementary School for an entire week knowing Paxton had already started school elsewhere.
>
> 45. In June of 2017, Mother unilaterally signed the children up for a camp that impeded on Father's custodial time.
>
> 46. In July of 2017, Father refused to provide Mother with substantive travel information for the children and unreasonably failed to return the minor children to Mother at the agreed-upon exchange time. In addition, Father frequently changes the exchange location at the last minute.

These findings of fact show the parties' difficulty communicating with each other and

their difficulty obtaining consent from one another when making decisions regarding

the well-being of their children, as well as how these actions have affected at least

one of their minor children. These findings of fact are insufficient to support an order abrogating the decision-making authority Father otherwise enjoys under joint legal custody. *See Carpenter v. Carpenter*, 225 N.C. App. 269, 280, 737 S.E.2d 783, 791 (2013) ("[J]oint custody implies a relationship where each parent has a degree of *control* over, and a measure of responsibility for, the child's best interest and welfare.").

While the trial court's order provides a "process" for Mother and Father to consult on decision-making via email or other written correspondence and a follow-up telephone call, Mother still has final decision-making authority on all major issues, leaving Father without recourse. So long as Mother goes through the steps of sending an email or responding to an email and having one phone call with Father, she can unilaterally make all major decisions for the children and still be in compliance with the trial court's order. The trial court erred by awarding veto power in decision-making responsibilities to Mother after awarding joint legal custody to both parties. This "process" does not remedy that error. The trial court's ruling regarding the unequal distribution of decision-making authority should be remanded for further proceedings regarding the issue of joint legal custody.

## B. Attorney's Fees

An attorney's fees award pursuant to N.C.G.S. § 50-13.6 requires the party seeking the award to (1) be an interested party acting in good faith, and (2) have

insufficient means to defray the suit. *Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 723-24 (1980). "Whether these statutory requirements have been met is a question of law, reviewable [de novo] on appeal." *Id.* at 472, 263 S.E.2d at 724. Further, the trial court's findings regarding whether the statutory requirements have been met must be supported by competent evidence. *Id.* Here, there is insufficient evidence in the Record to support a finding that Mother has insufficient means to defray the expense of the suit.

**1. Standard of Review**

The Majority's analysis of attorney's fees under an abuse of discretion standard of review is incomplete because the Majority has not reviewed whether the statutory requirements under N.C.G.S. § 50-13.6 have been satisfied. *Supra* at 3. While "[w]e typically review an award of attorney's fees under N.C.[G.S.] § 50-13.6 (2016) for abuse of discretion[,] . . . when reviewing whether the statutory requirements under [N.C.G.S. §] 50-13.6 are satisfied, we review *de novo*." *Sarno v. Sarno*, 255 N.C. App. 543, 548, 804 S.E.2d 819, 824 (2017) (discussing attorney's fees and N.C.G.S. § 50-13.6 in the context of child support). If we determine the statutory "requirements have been met[,] . . . the standard of review change[s] to abuse of discretion for an examination of the amount of attorney's fees awarded[,]" not before. *Sarno*, 255 N.C. App. at 548, 804 S.E.2d at 824. "In addition, the trial court's findings of fact must be supported by competent evidence." *Conklin v. Conklin*, 264 N.C. App. 142, 144, 825

S.E.2d 678, 680 (2019) (upholding an award of attorney's fees when trial court found the mother had insufficient means to defray the expense of the suit). "Only when these requirements have been met does the standard of review change to abuse of discretion for an examination of the amount of attorney's fees awarded." *Schneider v. Schneider*, 256 N.C. App. 228, 229, 807 S.E.2d 165, 166 (2017); *see also Sarno*, 255 N.C. App. at 548, 804 S.E.2d at 824.

**2. Statutory Requirements**

Attorney's fees can be awarded to the prevailing party in a child custody or support case when the party acts in good faith and has insufficient means to defray the expense of the suit. *See* N.C.G.S. § 50-13.6 (2019). N.C.G.S. § 50-13.6 provides:

> In an action or proceeding for the custody or support, or both, of a minor child . . . the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding; provided however, should the court find as a fact that the supporting party has initiated a frivolous action or proceeding the court may order payment of reasonable attorney's fees to an interested party as deemed appropriate under the circumstances.

N.C.G.S. § 50-13.6 (2019). In order to satisfy the requirements of N.C.G.S. § 50-13.6 for awarding attorney's fees in a custody and support action, "[t]he facts required by the statute must be alleged and proved" to support the order, namely that the

10

*Murphy, J., dissenting.*

interested party "is (1) acting in good faith and (2) has insufficient means to defray the expense of the suit." *Hudson,* 299 N.C. at 472, 263 S.E.2d at 723-24. The Majority affirmed the award of attorney's fees after concluding there was no abuse of discretion; however before we can apply an abuse of discretion standard of review, we must first address whether the trial court properly complied with the mandate of N.C.G.S. § 50-13.6, which is a question of law subject to de novo review. *Supra* at 8.

**a. Good Faith**

In determining good faith under N.C.G.S. § 50-13.6, the trial court is "in the best position to evaluate the merits and sincerity of the claims of both parties and to determine whether [the party] was acting in good faith." *Conklin*, 264 N.C. App. at 149, 825 S.E.2d at 682-83. "[A] party satisfies [the good faith element] by demonstrating that he or she seeks custody in a genuine dispute with the other party." *Id.* at 145, 149, 825 S.E.2d at 680, 683. Here, the trial court made Findings of Fact 78 and 79 in the *Amended Order Permanent Child Custody and Permanent Child Support*:

> 78. Mother is an interested party acting in good faith who does not have sufficient means as set forth in the Findings of Fact as to her income and expenses.
>
> 79. The [c]ourt finds that Mother acted in good faith as she was the spouse originally sued and has prevailed on her child custody and child support claims, who does not have sufficient means to defray the expense of this action and is entitled to an award of attorney's fees to be paid by Father pursuant to the North Carolina General Statutes.

Mother demonstrated she sought custody and support in a genuine dispute with Father. I agree with the Majority in so much as it determined Mother was an interested party acting in good faith.

**b. Insufficient Means to Defray the Expense of the Suit**

Having determined Mother acted in good faith, we must next determine if the trial court erred in concluding she had insufficient means to defray the expense of the suit, here, her attorney's fees. In accurately summarizing our law on this issue, *Lee's North Carolina Family Law* states:

> The court may award attorney's fees only to a party who does not have sufficient means to defray the costs of the action. A party has insufficient means to defray the costs of the action where the party is unable to employ adequate counsel in order to proceed as litigant to meet the other spouse as litigant in the suit.
>
> In determining whether a party has insufficient means, the trial court should examine the party's estate, income, and debts. Courts have found sufficient means where the requesting party had a separate estate of $930,484[.00], with debts of $264,831[.00] and the defendant had a separate estate of $747,553[.00], with debts of $254,612[.00]; where the gross incomes of plaintiff and defendant and their current spouses were similar; and where the requesting party had $27,000[.00] in a savings account.
>
> A party may be found to have insufficient resources to defray costs even if he or she has assets that could be sold to pay attorney's fees. The courts have recognized that a party should not have to unreasonably deplete his or her estate in order to pay these fees. For example, if a parent's only asset is the parties' former marital home, a finding

that he or she does not have sufficient means to defray the costs of the action should be upheld.

Likewise, if the [R]ecord shows that the obligee has been paying all of the uninsured medical expenses and that she has outstanding balances on those expenses at the time of the hearing, there is sufficient evidence of insufficient means. On the other hand, if the facts reveal that the obligee has a separate liquid estate of $88,000[.00], *the court must make a finding on whether resort to the separate estate would be an unreasonable depletion of that estate.*

The [appellate] courts have interpreted [N.C.G.S. § 50-13.6] to allow the trial court to compare the estates of the parties in making this determination. The court may compare the estates, for example, when the court is determining whether the depletion of the petitioner's estate would be reasonable or unreasonable. A comparison of the individual estates is not required where the evidence is clear that there would be no unreasonable depletion. The court may decide not to compare estates, for example, when the monthly income of the party seeking attorney's fees exceeds monthly expenses and the party has a large estate and no debts.

2  Suzanne Reynolds, *Lee's North Carolina Family Law* § 10.72 at 602-03 (5th ed. 1999 & Supp. 2018) (internal citations and quotation marks omitted) (emphasis added). Thus, the trial court must make a two-step analysis in determining whether a party has insufficient means to defray the costs of the action: (1) would the payment of attorney's fees deplete the party's estate, and (2) if the payment of attorney's fees would deplete the party's estate, would the depletion be reasonable or unreasonable?

In determining Mother's estate, income, and debts, there is sufficient evidence in the Record to support the conclusion the payment of Mother's attorney's fees is a

gift and not a debt. When asked about the payment of Mother's legal fees, Mother's parent testified

> [Father's Counsel]: Are you paying for [Mother's] legal fees?
>
> [Mother's parent]: Yes, I am.
>
> [Father's Counsel]: How much have you paid so far, approximately?
>
> [Mother's parent]: I'm going to say over $150,000[.00].
>
> [Father's Counsel]: Has [Mother] signed any promissory notes in regard to that?
>
> [Mother's parent]: No.
>
> [Father's Counsel]: Are you requiring her to pay that back?
>
> [Mother's parent]: No.

Therefore, the payment of Mother's attorney's fees is a gift, not a debt, and must be considered as part of her assets and estate. The trial court failed to take into account the impact of this gift on Mother's estate and further, did not inquire if Mother's payment of attorney's fees would deplete this estate. Additionally, the trial court failed to determine whether the depletion would be reasonable or unreasonable. The trial court did not properly satisfy the statutory requirements and therefore the issue should be remanded to the trial court to make a finding regarding whether Mother's payment of her attorney's fees would or would not be an unreasonable depletion of her estate.

*Murphy, J., dissenting.*

## **CONCLUSION**

The trial court erred in awarding Mother final decision-making authority without the necessary supporting findings of fact. This issue should be remanded to the trial court to make specific findings of fact regarding whether a warrant of unequal division of joint legal decision-making authority is justified. Further, the trial court did not satisfy the statutory requirements in awarding Mother attorney's fees. For these reasons, I must dissent.